**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02394-WYD-MEH

MALIBU MEDIA, LLC,

Plaintiff,

v.

JEREMIAH BENSON,

Defendant.

_____

**DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND EVIDENCE FROM IPP
INTERNATIONAL UG AND TOBIAS FEISER**
_____

Defendant, Jeremiah Benson, through undersigned counsel, hereby moves for an order excluding all testimony and evidence from IPP International UG and Tobias Feiser (collectively "IPP"). Plaintiff also respectfully requests that, Plaintiff Malibu Media disclose all past and present fee agreements between Plaintiff, its counsel and IPP. In support of the requests, Defendant states as follows:

**BRIEF IN SUPPORT**

Plaintiff, Malibu Media ("Malibu") is a prolific copyright litigant. In the last three years alone, Malibu has filed approximately 1773 copyright lawsuits nationwide, with 308 of those suits being filed in this Court alone. In every instance, these lawsuits are supported by evidence provided by the German firm IPP. (*See e.g.* Amended Complaint ¶¶ 16-17, 19-20; Exhibits A-B; Docket. No. 16; *see also* Affidavit of Tobias Feiser in support of Motion for Leave to Take Early Discovery; Dck. No. 7 Exhibit D.)  However, what has not disclosed to this, or any other Court is that IPP is a financially interested party. Specifically, in each of the above referenced cases IPP supplied evidence to Malibu pursuant to an "oral contingency agreement" with its national counsel

1

Keith Lipscomb, of the Miami based law firm Lipscomb, Eisenberg & Baker, P.L. IPP's actions as a contingent-fee witness are contrary to common law principles, public policy, the ABA Model and Colorado Rules of Professional Conduct as well as the Federal Anti-Gratuity Statute. For these reasons, IPP should not be allowed to offer evidence or testimony in this case. In addition, Malibu should be ordered to disclose to the Defendant, this Court, and any other court in which it has filed a lawsuit using evidence provided by IPP, all past and present fee agreements between Plaintiffs, its counsel and IPP for review and other appropriate judicial action.

## FACTUAL BACKGROUND

IPP is a German based company that provides services that involve the "track[ing] and monitor[ing of] illegal propagators within [BitTorrent] networks."[1] Malibu's lawsuits are supported by evidence provided by IPP, and in particular IPP employee Tobias Feiser. (*See e.g.* Amended Complaint ¶¶ 16-17, 19-20; Exhibits A-B; *see also* Affidavit of Tobias Feiser in support of Motion for Leave to Take Early Discovery; Dck. No. 7 Exhibit D.) In an identical copyright infringement case in a separate jurisdiction Malibu, certified under penalty of perjury that IPP is paid only based on a contingent of settlement proceeds. Specifically, Malibu admitted the following:

> **Interrogatory No. 1**: Please identify all . . . business entities that have an interest, financially, or otherwise, in this litigation, including, . . . forensic consultants, and/or witnesses, . .. and specifically and in detail describe the nature of the interest.
>
> **Response to Interrogatory No. 1**: . . . IPP International UG, is a fact witness who will testify that its technology detected that a person using Defendant's IP address was downloading and distributing Plaintiff's copyrighted works. **Pursuant to an oral contingency fee agreement, IPP International UG is entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provides.**

---

[1] *See* www.ippint.de/index.php?option=com_content&view=article&id=3&Itemid=3 (accessed Jan. 29, 2014).

(*See* Exhibit A – Verified Response No. 1). In response to an Interrogatory in another identical federal lawsuit, Malibu admitted that "[it] and IPP International UG have an oral agreement that was formed approximately 2.5 years ago "negotiated the terms of [Malibu]'s agreement with IPP." *(*Exhibit B – Verified Response No's. 4-5). Again, Malibu admitted that that its national counsel M. Keith Lipscomb, of the Miami based law firm Lipscomb, Eisenberg & Baker, P.L "negotiated the terms of Plaintiff's agreement with IPP International UG" and that IPP is "entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provided." *Id*. Finally, Malibu has repeatedly identified in court filings that IPP is "a fact witness who will testify that its technology detected that a person using Defendant's IP address was downloading and distributing Plaintiff's copyrighted works."[2] (*See* Exhibit A – Verified Response No. 1).

In response to this information, Defendant's counsel sought clarification from Malibu's local counsel as to the Malibu's fee agreement with IPP. (Exhibit C) Malibu's response however was completely contrary to the above referenced statements provided under penalty of perjury by Malibu's representative Colette Field, and submitted by its counsel pursuant to F.R.C.P. 11. *Id*. Defendant's counsel sought additional assurances, such as a simple declaration from Mrs. Field for example, or even Mr. Lipscomb. *Id*. Malibu never responded to this request. More telling perhaps is the fact that despite being ordered by the Honorable Geraldine S. Brown of the U.S. District Court for the Northern District of Illinois to disclose the nature and terms of this "oral

---

[2] The reference to IPP's "technology" would indicate that it is not as much a fact witness as an expert witness. However, it is likely that such designation was applied to IPP so as to avoid the need for drafting an expert report under Fed. R. Civ. P. 26.

3

contingency agreement," Malibu has steadfastly refused and now stands under the threat of a motion for show cause why it should not be held in contempt. (See Exhibit D).

## LEGAL ARGUMENT

### I. ALL EVIDENCE FROM IPP SHOULD BE EXCLUDED

    a. CONTINGENCY BASED COMPENSATION OF WITNESSES IS CONTRARY TO COMMON LAW PRINCIPLES, PUBLIC POLICY AND SUBJECT TO EXCLUSION

Relying on the common law and the court's authority to forestall violations of ethical principles, many jurisdictions have held that testimony of witnesses whose compensation is contingent upon the outcome of the case must be excluded. See, e.g., *United States v. Singleton*, 144 F.3d 1343, 1347 (10th Cir. 1998) (contracts to pay fact witnesses are void as violative of public policy), vacated on other grounds, 165 F.3d 1297 (10th Cir.), cert. denied, 119 S. Ct. 2371 (1999); *see also, Hamilton v. General Motors Corp.*, 490 F.2d 223, 228-229 (7th Cir. 1973) (holding that paying fact witnesses for testimony is against public policy and refusing to allow payment for testimony); *Followwill v. Merit Energy Co.*, 2005 WL 5988695, at *1 (D. Wyo. Apr. 11, 2005) (granting defendants' motion to exclude plaintiffs' expert witness and strike his expert report because the witness was paid on a contingency basis).[3]

---

[3] *See also Straughter v. Raymond*, 2011 U.S. Dist. LEXIS 53195, at *9-10 (C.D. Cal. May 9, 2011) (excluding expert witness compensated pursuant to a contingency fee); *see also e.g. Caldwell v. Cablevision Sys. Corp.*, 984 N.E.2d 909, 912, 960 N.Y.S.2d 711 (N.Y. 2013) ("What is not permitted and, in fact, is against public policy, is any agreement to pay a fact witness in exchange for favorable testimony, where such payment is contingent upon the success of a party to the litigation."); *Westin Tucson Hotel Co. v. State*, 936 P.2d 183, 190 (Ariz. App. 1997)("…a contract providing for compensation of a witness contingent on the success of the litigation is subversive of public justice for the reason that his evidence may be improperly influenced. Public policy considerations brand such a contract illegal."), *In re Schapiro*, 128 N.Y.S. 852, 858 (N.Y. App. Div. 1911) ("A witness who . . . receives compensation or a promise of compensation for giving his testimony is necessarily a discredited witness."); *Reffett v. C. I. R.*, 39 T.C. 869, 878 (1963) ("[I]t seems to be a rather generally accepted rule that all agreements to pay witnesses extra compensation contingent on the success of the lawsuit are against public policy whether the agreement is with an ordinary witness, an expert witness, or a witness who cannot be compelled to testify, because such agreements constitute a direct temptation to commit perjury."). *Ouimet v. USAA Casualty Ins. Co.*, 2004 U.S. Dist. LEXIS 31199, 2004 WL 5865274, at *2 (C.D. Cal. Jul. 14, 2004) (excluding expert's testimony, in part, because it "would run directly afoul of [Rule 5-310 of the California Rules of Professional Conduct], as her compensation under the contingency fee agreement depends upon the outcome of the case."); *Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (granting motion to strike reports of expert retained under contingency fee arrangement), aff'd on other grounds, 43 Fed. App'x 547 (4th Cir. 2002); *Cosgrove v. Sears Roebuck & Co.*, 1987 U.S. Dist. LEXIS 11696, 1987 WL 33595,

4

On the face of its discovery responses, Malibu admits under penalty of perjury that IPP is being paid on a contingent basis. (*See* Ex's A and B). IPP will make money only if this case is resolved positively for Malibu. Further, the amount of money IPP will make is contingent on the proceeds received in settlement or collected in judgment. Such an arrangement is contrary to public policy and common law principles that hold such agreements void on their face and an affront to the integrity of the judicial system by turning third parties into both a witness and a "de facto" financially interested Plaintiff. *See e.g. Commonwealth v. Miranda*, 458 Mass. 100, 934 N.E.2d 222, 229 n.15 (Mass. 2010) ("[c]ompensation to fact witnesses is said to violate the integrity of the judicial system, to undermine the proper administration of justice, and to be contrary to a witness's solemn and fundamental duty to tell the truth."). While the common law torts of maintenance no longer exist in Colorado, *Fastenau v. Engel*, 125 Colo. 119, 122 (Colo. 1952), such quasi barratrous and/or champertous financial arrangement should not be endorsed by this Court and evidence from IPP should be stricken from the record and excluded going forward.

    b. CONTINGENCY BASED COMPENSATION OF WITNESSES VIOLATES THE RULES OF PROFESSIONAL CONDUCT

While an issue of apparent first impression in this District, some trial courts have precluded improperly paid witnesses because their payment violates ethical rules. See, e.g., G*olden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994) (excluding fact witness as a sanction where lawyer "violated the very heart of the integrity of the justice system"). Moreover, model and state based ethical rules have long

---

at *1-2 (S.D.N.Y. Dec. 21, 1987) (precluding testimony of expert witness paid on contingency fee basis, but allowing party sixty days to designate new expert witness); *In re SMTC Mfg.*, 421 B.R. 251, 264 n.2 (W.D. Tex. Bankr. 2009) (noting prior dismissal of expert witness retained under contingency fee arrangement); *cf. Accrued Fin. Servs., Inc. v. Prime Retail, Inc*., 298 F.3d 291, 300 (4th Cir. 2002) (holding that to the extent that employees of financial auditing company planned to testify as experts, company was improperly offering expert testimony for contingent fee in violation of public policy).

prohibited lawyers from compensating witnesses on a contingent basis. *See* ABA Model Code of Professional Responsibility, DR 7-109(C) (1969) ("A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case.").

Colorado Rule of Professional Conduct 3.4(b) provides that a lawyer shall not "falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law." Comment [3] differs from the ABA Model Rule by stating, "[i]t is improper to pay *any witness* a contingent fee for testifying." (emphasis added.) Both the Colorado Supreme Court and the Colorado Appellate court have disapproved of such compensation. In *City & Cnty. of Denver v. Board of Assessment Appeals*, 947 P.2d 1373, 1379 (Colo. 1997), the supreme court vacated decisions in valuation proceedings because the appraisers who had testified were salaried employees of appraisal firms "that had executed contingent fee agreements with taxpayer clients."[3] It explained:

> "If the expert's payment is contingent on the ultimate outcome of the case, the witness' own interest will become intensified, and the reliability of the testimony and impartiality of the expert's position will be significantly weakened."

*Id.; see also Buckley Powder Co. v. State*, 70 P.3d 547, 559 (Colo. App. 2002) ("An expert witness should not receive a contingent fee because the expert may thereby be improperly motivated to enhance his or her compensation and thus lose objectivity.").[4]

In *People v. Belfor*, 197 Colo. 223, 226, 591 P.2d 585, 587 (Colo. 1979), an attorney was disciplined under DR 7-109, among other rules, for arranging payment of a judgment against the

---

[4] Highlighting the public policy against such suspect arrangements, at least between clients and attorneys, pursuant to Colo. R. Civ. P, C.R.C.P. Ch. 23.3, Rule 1 oral contingent fee agreement are not enforceable and the attorney cannot recover the fee amount specified in such an agreement. *Beeson v. Indus. Claim Appeals Office*, 942 P.2d 1314, 1316 (Colo. App. 1997).

witness "meant to be a gift to [the witness], contingent upon his favorable testimony, or a loan with a contingency that it would be forgiven if he testified favorably." The Colorado supreme court explained that "[i]t is both illegal and against public policy to pay or tender something of value to a witness in return for his testimony." *Id*. The most recent Colorado case to address the issue, the Colorado appellate court, while refusing to impose a per se rule of exclusion, clearly indicated that it "disapproved of compensating a fact witness on a contingent basis…" *Just in Case Bus. Lighthouse, LLC v. Murray*, 2013 Colo. App. LEXIS 1140, at *4 (Colo. Ct. App. July 18, 2013). The *Lighthouse* court indicated that "contingent compensation requires the trial court to determine whether the witness should be stricken as a sanction." *Id*.

This Court has already acknowledged that the fee agreement between Malibu and IPP is not privileged and relevant to Defendant's defense of the case. Specifically, in *Malibu Media v. Fantalis*, Malibu refused to disclose its fee agreement with IPP. The Defendant subsequently sought to compel Malibu to disclose the nature of the agreement based on allegations that Malibu had entered into a potentially illegal fee splitting arrangement. After fully briefing the issue this Court rejected Malibu's claims of privilege and ordered Malibu to:

> "to produce any agreements between Plaintiff, IPP Ltd., Tobias Fieser, Brigham Field a/k/a Brig Field, and Colette Leah a/k/a Coco Leah."

(See Exhibit E). The case was dismissed within days of this order. (See Dck. No. 155). Despite, Malibu and its counsel being placed on clear notice that its fee arrangement with IPP was not privileged and relevant to the defendant's defenses, Malibu failed to disclose the contingency relationship with IPP in not only the current dispute, but thousands of cases across the United States. Malibu is not a novice litigant and cannot credible claim to have been unaware that its fee arrangement with IPP was a clear violation of the Colorado Rules of Professional Conduct among

7

others. Indeed, Malibu has taken great lengths to prevent the disclosure of it "oral contingency agreement" with IPP.

First, just speaking out loud the words "witness oral contingency agreement" should give even a first year law student pause. Indeed, the very existence of an "oral" agreement brokered not by Malibu, but its counsel clearly demonstrates a deliberate attempt to prevent the creation of a discoverable paper trail and to frustrate discovery into what Malibu and its counsel knew was an prohibited fee arrangement. Again, neither Malibu, nor its counsel are novice litigants. No reasonable, competent attorney admitted to practice before this Court would so carelessly enter into an "oral contingency agreement" with a known witness. *See Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988); *see also White v. General Motors Corp., Inc.*, 908 F.2d 675, 680 (10th Cir. 1990)(in the context of Rule 11 "[a] good faith belief in the argument is not sufficient; the attorney's belief must also be in accord with what a reasonable, competent attorney would believe under the circumstances.").

Second, Malibu has actively frustrated discovery into its relationship with IPP and even the evidence that IPP is alleged to have gathered. Nearly every Malibu case that proceeds to substantive discovery has been meet with obfuscation and misdirection. Numerous motions to compel even the most basic discovery have been filed across multiple jurisdiction. c.f. *Malibu v. Hinds, et al.*, Case No. 1:12-cv-01117, Def't Michael Harrison's Brief in Support of Motion to Compel Discovery (ECF Doc. 151-3)(S.D. Ind. Jan 9, 2014). Malibu has also routinely refused to make any representative of, or documents in the possession of IPP available to the defendants. In one instance, in response to Malibu's refusal to make IPP's representative available for deposition, the Honorable John J. Tharp, Jr. ordered that:

> "Mr. Feiser must appear for deposition in this district…or the plaintiff will not be permitted to rely on any evidence supplied by Mr. Feiser going forward."

(See Exhibit F). Again, the case was "resolved" in a matter of days after Mr. Feiser was ordered to appear. By using a foreign company based outside the United States to collect evidence and routinely identifying it as a witness, then turning around and refusing to make that witness available, the Plaintiff is essentially insulating IPP from any examination by Defendant. Such heavy handed actions by Malibu obviously frustrate any discovery into its admitted "oral contingency agreement." Malibu's actions are well beyond "gamesmanship," but part of a coordinated effort to actively hide its contingency relationship with IPP. Such deliberate actions demonstrates not only a lack of candor before the Court, but a willful violation of the ethical concerns codified in C.R.P.C 3.4(d) and elsewhere.

While sanctions for Malibu and its counsel's conduct may be an appropriate use of this Court's inherent powers, public disclosure and exclusion of evidence from IPP is an appropriate use of this Court's discretion within the framework of the instant case. *Mercantile Adjustment Bureau, L.L.C. v. Flood*, 278 P.3d 348, 354 (Colo. 2012) ("[W]here the Rules of Professional Conduct become intertwined with litigation and a potential ethical violation threatens to prejudice the fairness of the proceedings, a trial court may consider the issue not as a disciplinary matter but rather within the context of the litigation.").

Malibu's action were not an isolated instance, or relegated to a mere handful of cases but literally thousands. Malibu's actions demonstrate a clear tactical and deliberate decision to circumvent unambiguous ethical rules. As the Western District of Wisconsin noted in sanctioning Malibu for inappropriate litigation conduct:

> [T]hese internet copyright infringement cases already give off an air of extortion…

*Malibu v. Doe,* Case No. 3:13-cv-00209, Opinion & Order (ECF Doc. 27) (E.D. Wis. Sept. 10, 2013) (internal citations omitted). While resolution of the public's opinion of mass-copyright enforcement is beyond the scope of relief this Court may grant, it is within the scope and power of this Court to demonstrate that clear and unambiguous violations of ethical rules will not be allowed to erode the public's opinion of the judicial process. To hold otherwise sets a clear precedent that only encourages future unethical conduct and rewards Malibu's -- and other mass-copyright Plaintiff's[5] -- lack of candor before this Court as well as its deliberate efforts to hide what it knew was unethical and inappropriate behavior.

    c. MALIBU'S EX PARTE MOTION FOR EARLY DISCOVERY VIOLATED COLORADO RULE OF PROFESSIONAL CONDUCT 3.3(d)

During an *ex parte* proceeding, attorneys have a higher ethical duty than perhaps any other time. Indeed, counsel must disclose all facts, good or bad. C.R.P.C 3.3(d); American Bar Ass'n Rules of Professional Conduct 3.3(d) ("[i]n an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.").

The *ex parte* grant of early discovery in this and thousands of Malibu cases across the country was based upon evidence provided by IPP without disclosing the material fact that it was being paid pursuant to an "oral contingency agreement" and therefore subject to exclusion and/or

---

[5] www.abajournal.com/magazine/article/how_two_california_solos_helped_take_down_porn_troll_prenda_law. Article outlining another similarly situated mass porn copyright litigation group, Prenda law which had previously filed cases in Colorado. To date, Prenda has been sanctioned multiple times for amounts well into the six figures and its principal officers have been referred by several Court for criminal investigation in addition to ethical investigations in several states.

10

at the least attacks on its credibility. (*See* Dck No: 7 Exhibit D). The *ex parte* motion for early discovery in this case was supported with Malibu knowingly filing the Feiser declaration without disclosing that IPP had entered into an "oral contingency agreement" with IPP. Malibu plainly knew that its fee arrangement with IPP could subject the evidence to exclusion, or at a minimum increased scrutiny into its credibility. This activity alone violates Colorado Rule of Professional Conduct 3.3(d) which states: "[i]n an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.").

Malibu requested extraordinary relief from this Court in an ex *parte* motion. Malibu's counsel had a duty to inform this court of all material facts, good and bad, so as to allow this Court to make an informed decision. The record indicates that Malibu failed to disclose that IPP was and is being illegally and/or unethically compensated. Even if such testimony were not excluded out of hand, this Court should have at least had the opportunity to judge the credibility and weight of the evidence prior to its grant of early discovery. *c.f. Jamaica Time Petroleum v. Fed. Ins. Co.*, 366 F.2d 156, 158 (10th Cir. 1966) ("The payment of the reward affects the credibility of the witness and the weight to be given his testimony.)

    d. MALIBU'S "ORAL CONTINGENCY AGREEMENT" VIOLATES THE FEDERAL ANTIGRATUITY STATUTE

The Federal Antigratuity statute makes it a crime to give or promise anything of value for testimony under oath. Specifically, it states that:

> Whoever . . . directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . authorized by the laws of the United States to hear evidence or take testimony . . . shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2). If done "corruptly," there is also a violation of §201(b)(3) of the same statute. The legislative intent behind section 201(c)(2) "indicates Congress's belief that justice is undermined by giving, offering, or promising anything of value for testimony." *Centennial Mgmt. Servs. v. Axa Re Vie*, 193 F.R.D. 671, 681 (D. Kan. 2000). The Tenth Circuit has stated that the language of the federal anti-gratuity statute "could not be more clear." *United States v. Singleton*, 144 F.3d 1343, 1345 (10th Cir. 1998), vacated on other grounds, 165 F.3d 1297 (10th Cir.), cert. denied, 119 S. Ct. 2371 (1999). In *Singleton*, the Tenth Circuit found that "payments and protections given to [the witness] violate common law and public policy against paying fact witnesses for testimony; violate , see 18 U.S.C. § 201(c)(2) the federal anti-gratuity statute; and violate Model Rule of Professional Conduct 3.4(b).

Echoing the *Singleton* Court, the fact that Malibu Media offered and paid for IPP's testimony with settlement proceeds "could not be more clear." Such actions are likely a violation of federal law, punishable by fines and/or imprisonment. Defendant cannot say if such actions were done "corruptly," but the evidence does indicate that Malibu's actions were deliberate, including its efforts to conceal the IPP fee agreement from this and other Courts. To allow such testimony into the record of the Court would be manifestly unjust.

**WHEREFORE**: The Defendant respectfully requests that this Court issue an Order:
1. Vacating its prior Order granting early discovery;
2. Striking from the record all evidence provided by IPP as an appropriate sanction for Malibu's conduct;
3. Excluding IPP from providing any additional evidence in this case as an appropriate sanction for Malibu's conduct;

4. Requiring Malibu to disclose all past and current fee arrangements with IPP with this and any court where it has filed any copyright infringement action;

5. Requiring Malibu to pay Defendant's reasonable attorney's fees; and

6. All other relief this Court finds just and appropriate.

Respectfully submitted February 20th, 2012.

                          SANTANGELO LAW OFFICES, P.C.

                          /s/ David S. Kerr
                          David S. Kerr
                          125 South Howes St., 3rd Floor
                          Fort Collins, CO 80521
                          Telephone: 970-224-3100
                          Email: dkerr@idea-asset.com

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCIVR 7.1

Pursuant to D.C.Colo.L.Civ.R. 7.1(A), counsel for the Parties have conferred regarding the relief sought herein.

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Motion was served by EFS and email on this 20th day of February, 2014, upon the following counsel:

Jason Kotzker
Kotzker Law Group
9609 S University Blvd., #632134
Highlands Ranch, CO 80163
jason@klgip.com

                                                /s/ David S. Kerr