## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02394-WYD-MEH

MALIBU MEDIA, LLC,

Plaintiff,

v.

JEREMIAH BENSON,

Defendant.

_____

## DEFENDANT'S RESPONSE
_____

Defendant, Jeremiah Benson, through undersigned counsel, hereby respond to Plaintiff's motion to strike certain affirmative defenses. In support of its opposition, the Defendant states as follows:

## INTRODUCTION

The "Copyright Clause" of the U.S. Constitution empowers Congress:

> To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

U.S. Const. art. I, § 8, cl. 8.  Under cover of the First Amendment, an otherwise illegal commercial sex act (*i.e.*, pimping/prostitution) can be transformed into protectable speech (*i.e.*, pornography) when the act is video-recorded and distributed to the public for profit.  *See* U.S. Const. amend. I ("Congress shall make no law. . . abridging the freedom. . . of the press . . .); *California v. Freeman*, 488 U.S. 1311 (1989). However, neither copyright law nor the First Amendment necessarily guarantee the right to have federal courts enforce a monopoly protecting pornographic videos, if the material was unlawfully produced.

1

The extreme example of child pornography illustrates that copyright protection must have some kind of substantive limit.  Imagine a convicted child molester, in jail for life with nothing to lose, who videotaped the crime and then attempts to register a copyright depicting sex crimes on a minor and then sues for infringement thereof. The Copyright Office does not examine for content or substance so, as long as the registration application was procedurally correct, the registration would presumably be issued as a matter of course.  Though it remains an open question in this jurisdiction, other courts have held that no provision of the Copyright Act itself would explicitly prevent such a suit—even if the work is legally "obscene." *See e.g. Jartech, Inc. v. Clancy*, 666 F.2d 403 (9th Cir. 1982) (". . .this court does not agree that obscenity constitutes a defense to a copyright claim. . ."); *see also Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) (citing *Jartech*).

Under trademark law, the Lanham Act explicitly refuses registration if the nature a proposed mark "[c]onsists of or comprises immoral, deceptive or scandalous matter." 15 U.S.C. § 1052(a).  Similarly, patent law has a "moral" component to utility, which has occasionally been asserted as a basis to refuse registration, and which has more recently been the subject of renewed vitality in the bioethics realm. *See Lowell v. Lewis*, Fed. Cas. No. 8568 (C.C. Mass. 1817) (Story, J.), *quoted in Tol-O-Matic, Inc. v. Proma Product-und Marketing Gesellschaft M.b.H* ., 945 F.2d 1546, 1552 (Fed. Cir. 1991); *see also* "U.S. Patent and Trademark Office, Facts on Patenting Life Forms Having a Relationship to Humans," Apr. 1, 1998[1] (explaining the PTO's reasons for refusing registration to an application for creation of a part-human "chimerical" monster based on public policy and morality grounds).  By contrast, the normative limits of copyright law are less clearly defined.

---

[1] Available here: http://www.uspto.gov/web/offices/com/speeches/98-06.htm

The point of the copyrighted child pornography example is that the doctrines at issue in this action are the equitable bulwarks that protect copyright law from abuse by the unlawful and the immoral. *See Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) ("Given the clearly criminal nature of plaintiff's operation, it is self-evident that the Court should not use its equitable power to come to plaintiff's assistance and should invoke the doctrine of unclean hands. . ."). If one allows that a court has the discretion to decline to enforce a copyright to child pornography (because of the plaintiff's unclean hands, etc.; whichever the equitable theory) then it is only a small leap to one of defendant's main arguments here.  If any of the sexually explicit films featuring young-looking girls at issue here were feloniously produced in violation of the strict record-keeping requirements of 18 U.S.C. § 2257 *et seq*. and its related regulations at 28 C.F.R. 75 *et seq.* ("Section 2257"), then the Court should not enforce copyright monopolies for such films.

A Section 2257 defense to copyright infringement would be entirely consistent with the First Amendment. Specifically, Section 2257 is "content-neutral and survived intermediate scrutiny, because [it is] a narrowly tailored means for Congress to effectuate its goal of combating child pornography." *Free Speech Coalition, Inc. v. Holder*, 2013 U.S. Dist. LEXIS 100165 (E.D. Pa. July 18, 2013) (E.D. Pa. No. 2:09-cv-4607-MMB, ECF No. 229) ("*Free Speech Coal. II*"). The public's interest in combating child pornography can scarcely be understated and Section 2257 has survived spirited and prolonged constitutional challenges by the adult industry, as an appropriate means of furthering this very significant and important goal. *See id.*  In the same way that the Court should not enforce a copyright for actual child pornography, the court should similarly decline to enforce copyrights for movies produced in violation of criminal rules that are narrowly-tailored to help combat the same problem. While pornography may qualify as speech

and thus be saved from being prostitution by virtue of the First Amendment, that does not mean the court needs to affirmatively enforce a copyright monopoly for a work that was feloniously produced in violation of a content-neutral criminal law.

Similarly, defendant by raising this defense is in essence alleging that Malibu Media comes to this Court with a certain type of "unclean hands." If Malibu Media or its principals have indeed committed a felony in failing to comply with Section 2257 for the titles at issue in this litigation, that would be a transgression "of serious proportions" that is directly related to the copyrighted works that are subject of the alleged infringement. *See Saxon v. Blann*, 968 F.2d 676, 680 (8th Cir. 1992) (as to the standard applied only). Further, Malibu Media should not now complain of being asked to verify compliance with Section 2257.  Malibu Media invited the inquiry by moving beyond mere speech and into the realm of weaponizing its copyright registrations by affirmatively filing thousands of infringement suits nationwide (hundreds in this district alone) for pornographic movies featuring young-looking girls.

Without yet having the benefit of any discovery on Section 2257 issues, some kinds of violations appear possible, if not likely. Malibu's principal Colette Field testified at the bellwether trial in Pennsylvania that Malibu Media apparently does not put Section 2257 notices at the start or in the end credits of its videos. [2]  (Exhibit A: Bellwether Tr., p. 51:4–52:12).  Instead, Malibu puts a link to Section 2257 records at the footer of its website.[3]  Arguably, this violates 28 C.F.R. 75.8(b)–(c), which requires that for "any film or videotape" the Section 2257 notice be located

---

[2] Ms. Field testified to this effect at the so-called bellwether trial before Judge Baylson in Pennsylvania. *Malibu Media, LLC v. John Does*, E.D. Pa. No. 2:12-cv-2078.  The portion of the relevant transcript of Ms. Field's testimony on this issue was, surprisingly, offered Malibu as extrinsic evidence in support of its motion to dismiss defendant's counterclaims (similar to Malibu's same motion pending here) in *Malibu Media, LLC v. John Doe,* S.D. Cal. No. 13-435, ECF No. 19-2 ("Bellwether Tr.").  A copy of the transcript excerpt filed by Malibu in California, from the bellwether trial in Pennsylvania, is attached hereto as Exhibit A.

either at the end of the end titles or final credits or "within one minute from the start of the film or videotape and before the opening scene." *Id.* Apparently, Malibu believes its films are exempt from those requirements and that it fully complies with the "location of statement" regulation by including a link to notices on the footer of the website, per 28 C.F.R. 75.8(d).[4]

If Malibu Media were suing people for unlawfully accessing its website, instead of alleging separate claims for copyright infringement for each of their different films/"vignettes", its chosen manner of compliance might be sufficient. Given its ongoing infringement litigation campaign, Malibu Media would certainly seem to be aware that their individual movies are appearing on BitTorrent, and other places beyond is own website, presumably without any kind of Section 2257 notice. In addition, one wonders whether Malibu Media's required notice remains visible if a visitor to the site clicks a link to expand/maximize a sexually explicit video such that the main website footer is no longer visible. The foregoing is by no means a complete account of Section 2257 issues with Malibu's various pornographic films that serve as the basis for these suits, but it shows that the topic is ripe for discovery, at the very least. Likewise, defendant also has a good faith basis to suggest that a copyright may be found to be invalid if the underlying material is obscene. Such a suggestion is an issue of first impression in Colorado and should be allowed to proceed.

---

[4] This is in addition to recent public revelations that Malibu Media has filmed perhaps hundreds of pornographic films depicting individuals having unprotected sex at their home in Ventura County, California located in a family residential neighborhood. Such activities were unpermitted and are likely in violation of the Chapter 10 of Division 4 of the Ventura County Ordinance entitled: Safer Sex in the Adult Film Industry which forbid filming pornographic films in residential areas. These films depicting unprotected sex also likely represent numerous violations of California Code of Regulations Title 8, Section 5193. http://fightcopyrighttrolls.com/2014/02/07/x-artmalibu-media-sues-alleged-file-sharers-over-illegally-produced-videos/

## **LEGAL STANDARD**

Striking a portion of a pleading is a drastic remedy; the federal courts generally view motions to strike with disfavor and infrequently grant such requests. 5C Charles Alan Wright &Arthur R. Miller, Federal Practice and Procedure § 1380 (3d ed. 2004). This is because of the limited importance of pleading in federal practice, and because motions to strike are often used as a delaying tactic. *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Whether to grant a motion to strike lies within the sound discretion of the district court. In exercising its discretion, the court views the pleadings in the light most favorable to the nonmoving party. *Bassiri*, 292 F. Supp. 2d at 1220; *Nelison*, 290 F. Supp. 2d at 1152. A court should not grant a motion to strike unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. *Bassiri*, 292 F. Supp. 2d at 1220. Motions to strike are limited to the grounds specified in Rule 12(f), meaning that they may only be brought to cure "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f).

## I.   VIOLATIONS OF SECTION 2257 REPRESENT A NOVEL AND VALID AFFIRMATIVE DEFENSE TO COPYRIGHT INFRINGEMENT

Malibu Media makes pornographic movies that feature young, often foreign persons engaged in actual, graphic sexual intercourse and is therefore subject to Section 2257. Unlike many other smaller producers who use professional, third party custodians of records, upon information and belief Malibu attempts to comply with the requirements of Section 2257, which are complex and difficult, in-house. Record keeping requirements for talent overseas is much less stringent, and the problem of talent or their representatives providing incomplete, insufficient or even fake identity documents is particularly acute with female performers from former-Soviet-block countries, among other problem areas. Upon information and belief, many of Malibu Media's

female on-screen sex workers are marketed as "teens," and a substantial number of them hail from former Soviet-block countries. More specifically, on information and belief as alleged in other federal proceedings, Malibu has in the past attempted to skirt and ignore work visa requirements for foreign female performers it brought to the US to work on its pornographic film shoots occurring in Miami and Los Angeles. Adding these facts together, Defendant alleges on information and belief that the Section 2257 records for certain of the pornographic movies at issue in the complaint in this action may be incomplete, deficient, or even fabricated.

As relevant here, Section 2257 imposes requirements that producers of actual sexually explicit conduct "create and maintain individually identifiable records pertaining to every performer portrayed in such a visual depiction." 18 U.S.C. § 2257(a). Any person who qualifies as a producer, must verify a performer's age, name, and any aliases, by examining her (or his) ID, as prescribed by regulations, and record this information as prescribed by regulation. 18 U.S.C. § 2257(b). The records must be available for inspection at all reasonable times. 18 U.S.C. § 2257(c). In addition, any producer must affix to every copy of the sexually explicit work a statement indicating where the required records are maintained. 18 U.S.C. § 2257(e).

Subsection (f) makes it "unlawful" for any person covered by the statute to: (1) fail to create or maintain the required records; (2) knowingly make any false entry or fail to make an appropriate entry; (3) knowingly fail to comply with the record location statement of subsection (e); (4) sell any video (or other form of media) "which does not have affixed thereto," a statement describing where the records required may be located; and (5) refuse any inspection request by the Attorney General or his or her designee. 18 U.S.C. § 2257(f).

Subsection (g) authorizes the attorney general to issue appropriate regulations to carry out this statute (18 U.S.C. § 2257(g)), which were duly promulgated at 25 C.F.R. 78. Subsection (i)

provides that "whoever violates this section shall be imprisoned for not more than 5 years, and fined in accordance with the provisions of this title, or both. Whoever violates this section after having been convicted of a violation punishable under this section shall be imprisoned for any period of years not more than 10 years but not less than 2 years, and fined in accordance with the provisions of this title, or both." 18 U.S.C. § 2257(i).

The regulation detailing where the required record keeping statement must appear on sexually explicit content, as required by 18 U.S.C. § 2257(e), provides, in its entirety,

§ 75.8 Location of the statement.

(a) All books, magazines, and periodicals shall contain the statement required in § 75.6 or suggested in § 75.7 either on the first page that appears after the front cover or on the page on which copyright information appears.

(b) **In any film or videotape which contains end credits** for the production, direction, distribution, or other activity in connection with the film or videotape, **the statement** referred to in § 75.6 or § 75.7 **shall be presented at the end of the end titles or final credits** and shall be displayed for a sufficient duration to be capable of being read by the average viewer.

(c) **Any other film or videotape shall contain the required statement within one minute from the start of the film or videotape, and before the opening scene**, and shall display the statement for a sufficient duration to be read by the average viewer.

(d) **A computer site or service or Web address** containing a digitally- or computer-manipulated image, digital image, or picture **shall contain the required statement on every page of a Web site on which a visual depiction of an actual human being engaged in actual or simulated sexually explicit conduct appears**. Such computer site or service or Web address may choose to display the required statement in a separate window that opens upon the viewer's clicking or mousing-over a hypertext link that states, "18 U.S.C. 2257 [and/or 2257A, as appropriate] Record-Keeping Requirements Compliance Statement."

(e) For purpose of this section, a digital video disc (DVD) containing multiple depictions is a single matter for which the statement may be located in a single place covering all depictions on the DVD.

(f) For all other categories not otherwise mentioned in this section, the statement is to be prominently displayed consistent with the manner of display required for the aforementioned categories." 28 C.F.R. § 75.8 (emphasis added).

The foregoing record-keeping requirements of Section 2257, which are applicable to Malibu Media, have been the subject of spirited—although unsuccessful—challenges on free speech and other grounds by the adult industry. *See Free Speech Coalition, Inc. v. Holder*, 2013 U.S. Dist. LEXIS 100165 (E.D. Pa. July 18, 2013) (E.D. Pa. No. 2:09-cv-4607-MMB, ECF No. 229) ("*Free Speech Coal. II*") (Baylson, J.) (memorandum reviewing history of current challenges to Section 2257 and explaining final judgment in favor of government on all claims except one not relevant here). However, in round one of the litigation challenging Section 2257, "the Court held the [Section 2257] statutes and regulations were content-neutral and survived intermediate scrutiny, because they are a narrowly tailored means for Congress to effectuate its goal of combating child pornography". *Id.* at p. 3; *citing Free Speech Coalition, Inc. v. Holder,* 729 F. Supp. 2d 691, 746 (E.D. Pa. 2010) ("*Free Speech Coal. I*") *aff'd in relevant part, rev'd in part by Free Speech Coalition, Inc. v. Holder*, 677 F.3d 519, 533 (3d Cir. 2012) (holding that "the District Court did not err in determining that the [Section 2257] Statutes were content neutral and that intermediate scrutiny is applicable" but remanding to afford the plaintiffs the opportunity to conduct discovery and develop the record regarding whether statutes were narrowly tailored).

In round two of the most recent challenge, after allowing discovery and considering the evidence after trial, Judge Baylson held that Section 2257 was indeed narrowly tailored as applied to plaintiffs, and that it was not facially overly broad as applied to the public in general. *Free*

*Speech Coal. II, supra*, at pp. 38–47.[5]  In short, Section 2257 is a content-neutral restriction on speech that has been found to pass First Amendment muster by the federal courts, because it is narrowly tailored to help prevent sexual abuse of minors, which is obviously an important state interest.  *Id.*

### A.  Malibu Media Has Failed to Meet its Burden of Showing the Total Implausibility of the Equitable Defenses Asserted by Defendant

Admittedly, the notion that a pornographic film produced in violation of Section 2257 should be subject to one or more equitable defenses to copyright infringement is an issue of first impression in this or any jurisdiction.  However, Malibu Media has failed to cite any contradictory case law, or put forward any kind of convincing rationale as to why such a defense should not be recognized, at least at this preliminary stage.  In view of Ms. Field's testimony at the bellwether trial, proffered by Malibu in support of the instant motions (Bellwether Tr., pp. 51:4–52:12) wherein she seems to explain that Malibu does not actually affix the required notice before or after the company's movies, as required by 28 C.F.R. § 75.8(b)–(c), one can understand why Malibu Media would not wish this area explored.

Defendant does not seek to impose a prior restraint on Malibu's ability to go out and film pornographic movies that amount to "speech" rather than prostitution. However, the public interest safeguarded by Section 2257—preventing sex crimes against children—is substantially more important than other general record-keeping statutes.  Defendant specificlly contends that if Malibu has unlawfully produced the copyrighted works at issue, then the court is within its discretion to allow an equitable, judicial defense to infringement based on Malibu's alleged

---

[5] Judge Baylson's most recent, final decision in the Section 2257 litigation was appealed to the Third Circuit (USCA Appeal No. 13-03681) by the challengers to the statute, and cross-appealed by the U.S. Attorney General (USCA Appeal No. 13-3799) on the one issue the government lost.

wrongdoing, such wrongdoing being the inability to account to the public that it has not sexually exploited children.

However, the Section 2257 defense need not stand alone, it also fits under the rubric of other, better-known equitable defenses, such as estoppel type-defenses to copyright infringement. For example, Ninth Circuit stated of the estoppel defense, "[a]s Professor Nimmer has written, the defense of illegality or unclean hands is 'recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action. . . .'" *Dream Games*, 561 F.3d 990–91.  Here, if Malibu did indeed violate Section 2257, that would be a "serious transgression," since it is punishable by up to five years in prison, or ten for repeat offenses.  18 U.S.C. § 2257(i).  Further, the alleged transgression related directly to the subject matter of the infringement action; defendant only seeks to assert to the Section 2257 defense to the extent it is applicable to the copyrights in suit.  One Section 2257 violation on a movie not at issue would not necessarily establish the defense. Moreover, Defendant is currently incurring special damage in the form of attorney's fees, to defend claims related to movies, some of which are alleged to have been illegally produced.  *Cf. TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 (1993) (plurality opinion) (affirming award of $10,000,000 in punitive damages where the only harm to defendants were in the nature of special damage attorney's fees, totaling a mere $19,000, to defend an improper legal action).

In *Devils Films, Inc. v. Nectar Video*, 29 F. Supp. 2d 174 (S.D.N.Y. 1998) when a district court was asked to invoke its equitable powers to allow seizure of allegedly pirated copies of hardcore pornography, it invoked the doctrine of unclean hands and declined to do so.  *Id.* The court deemed the movies at issue "obscene," noting it was "hard core pornography bereft of any plot and with very little dialogue." *Id.* at 175.  After noting that the plaintiffs were transporting

11

the obscene material in interstate commerce, which is a crime, the court explained, "[g]iven the clearly criminal nature of plaintiff's operation, it is self-evident that the Court should not use its equitable power to come to plaintiff's assistance and should invoke the doctrine of unclean hands and leave the parties where it finds them. *Dunlop-McCullen v. Local 1-S AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir.1998)." *Id.* at 176 (emphasis added). Accordingly, the court concluded that it would not exercises its equitable powers to issue an order of seizure and preliminary injunction. *Id.* at 176–77.

In another persuasive example, Judge Posner recently noted that aside from the issue of the copyrightability of an illegal work, there remains a "separate question, which is unresolved," as to "the applicability of the doctrine of *in pari delicto* (equally at fault)" which is another name for unclean hands. *Flava Works,* 689 F.3d 756. As Judge Posner explained, "It could be argued that the courts shouldn't be bothered with a suit that, whichever side wins, will have been won by a wrongdoer." *Id.* However, the Seventh Circuit did not actually reach that issue in *Flava Works* because "there is no contention that any of Flava's videos are illegal." *Id.*

Although most typically applied in the anti-trust context, copyright misuse type defenses have also been invoked to deal with general public policy concerns. As Professor Nimmer has explained, "even absent the plaintiff's use of its copyright in violation of the antitrust laws, 'an equitable defense to an infringement action [might lie if] the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright.'" 4 Nimmer on Copyright § 13.09 *citing, inter alia, Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 521 (9th Cir.), *cert. denied*, 522 U.S. 933, 118 S. Ct. 339, 139 L. Ed. 2d 263 (1997) (following *Lasercomb*). Simply, the kind of artistic expression intended to be incentivized under the Copyright Act does not extend to promoting child

12

pornography.  Section §2257 was enacted to prevention even the production of this material. Nor would such "speech" be protected under the First Amendment; it would be criminal. As such, an equitable "copyright misuse" defense may be inferred from Malibu's alleged conduct.

Evan apart from the question of Section 2257 requirements, it is an open question in this jurisdiction whether obscene material may be valid and/or enforceable. Three different district court judges in three separate cases virtually identical to this one have all raised the question.  In New York, Judge Gary R. Brown observed in a footnote that while he was assuming for the purpose of the motion that the works in question were copyrightable, "that may be an open question."  *In Re BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765 (E.D.N.Y. May 1, 2012) at p. 12, fn. 8. More recently, Judge Victor Marrero stated, "the Court recognizes that, if the Motion Picture is considered obscene, it may not be eligible for copyright protection." *Next Phase Distribution v. John Does 1-27*, 1:12-cv-3755-VM, Decision and Order, (S.D.N.Y. July 31, 2012), p. 15. Both of these judges cited *Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1-38*, 821 F.Supp.2d 444, 447 n. 2 (D.Mass 2011), which noted that it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement." The question of whether pornographic films can be protected by copyright has never been tested in Colorado's District Courts or in the 10th Circuit. Thus, Defendant is raising in good faith a legal question of first impression.

Finally, Plaintiff's contention that the Court, by allowing Defendant's equitable defense would be somehow reading new provisions into the Copyright Act misses the mark. Defendant seek recognition of a novel and multi-faceted equitable defense. Traditional common-law equitable defenses such as unclean hands and misuse are not expressed anywhere in the Copyright Act. To follow Plaintiff's argument that this Court should strike any affirmative defense that not

expressly written in some statutory language itself would eliminate all equitable and judicially created defenses. Such a conclusion is illogical and should be rejected.

## CONCLUSION

Defendant is asking this court to address, as Judge Posner stated the "separate question, which is unresolved" as to whether an equitable defense may be raised to copyright infringement based on the theory that violation of a content-neutral, narrowly-tailored criminal statute should not be rewarded by the Court. *See Flava Works,* 689 F.3d 756. For the foregoing reasons, Defendant respectfully requests that the Court deny Malibu Media's motions to strike Defendant's affirmative defenses. At a minimum, Defendant request the opportunity to amend its pleading to offer additional factual support for these defenses.

Respectfully submitted February 26th, 2012.

SANTANGELO LAW OFFICES, P.C.

/s/ David S. Kerr
**David S. Kerr**
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Telephone: 970-224-3100
Email: dkerr@idea-asset.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was served by EFS and email on this 26th day of February, 2014, upon the following counsel:


Jason Kotzker
Kotzker Law Group
9609 S University Blvd., #632134
Highlands Ranch, CO 80163
jason@klgip.com


/s/ David S. Kerr