## DECLARATION OF JEREMIAH BENSON

I, Jeremiah Benson, affirm and state that the following facts are true and correct to the best of my knowledge and belief and that I am competent testify as to all statements herein.

1. The terms outlined in the email to Malibu Media's counsel on June 16, 2014, are consistent with the terms I agreed to during the settlement conference except I also believe that I requested full reimbursement for all my out of pocket costs associated with this lawsuit..

2. I would have never approved any settlement with Malibu Media without an agreement that Malibu would provide: 1) a specific statement of exoneration; 2) an apology on the record; and 3) inclusion of any computer forensic report on the record. I also believe that I requested full reimbursement for all my out of pocket costs associated with this lawsuit.

3. I went to the settlement conference in good faith hoping that we could reach a settlement.

4. I never agreed to, nor do I remember ever discussing turning over any computer devices except in the event I failed a polygraph examination. The first time I heard this term was when my attorney told me about the email he received from Malibu's attorney. Malibu Media has never requested to take possession of or inspect any of my computer devices.

5. Ever since I found out I was involved in this case I told Malibu Media through my attorney that my computer devices are open to inspection at any time. The only condition was that, on the advice of counsel, Malibu Media enter a protective order to safe-guard my personal information, and that any inspection would be performed by an independent, third-party.

6. Ever since I found out I was involved in this case I told Malibu Media through my attorney that I wanted to have my computers forensically inspected, and that the only impediment was the financial expense. The additional strain of spending several thousand dollars for an inspection, together with attorney costs and time off work, is no small burden on my wife and I. I have constant anxiety and both my marriage and work have been strained as a result of this entire lawsuit. I just want to clear my name and have Malibu go away.

7. I do not trust Malibu Media, nor do I believe they are acting with good faith toward me or this case. I was stunned when Mr. Kotzker said he didn't agree to the terms I thought I agreed to. I personally thought Mr. Kotzker was lying to me or was already trying to get out of the deal. I have looked into polygraph examinations and discussed them extensively with my attorney; my understanding is that it is basically a coin-toss to get an accurate result, and that it is even more difficult in my case as I am trying to prove I am not lying, as opposed to detecting a lie. I am also aware that many polygraph examinations come back as inconclusive. With this in mind, given how much this has stressed me out already, I honestly believed that I would have to have my computers inspected anyway.

8. I am aware that Malibu Media's expert was charged with a felony drug possession crime. I have not been provided any information to confirm Malibu's claim that this charge was expunged. I was also made aware that in other Malibu cases Mr. Paige made reports that appear to falsely accuse people of destroying evidence. I was genuinely afraid that Malibu and Mr. Paige would also falsely accuse me in this case and craft a misleading or false report to try and smear me.

9. Based on what I believed was best to prove my innocence and protect myself and my family I decided to have my computers inspected. I was not instructed by my attorney or anyone else to do this. I personally contacted several forensic examiners and finally decided on Forensic Pursuit, as they seemed like the most reputable and qualified to do a good job. I did not ask them to provide anything other than a completely independent and unbiased report. I know I am innocent, so I was not afraid of the results.

10. I also wanted to have my own forensic report for the following reasons. Specifically, I wanted:
    a. to preserve the evidence on my computers, since the case had dragged on for over nine months heightening the risk of, for example, an inadvertent drive or other catastrophic failure or other unintentional loss of data;

    b. to stop any chance that Malibu Media would attempt to falsify evidence;

    c. to prevent the incomplete and misleading reports provided by Mr. Paige in other nearly identical cases;

    d. to provide an independent report that I could keep and show my family, friends as well as my current and/or potential future employers;

    e. to generate a forensic report that could possibly be filed with the Court to show that I am innocent; and

    f. to demonstrate to my attorney and my wife that I am 100% innocent and I did not destroy any evidence. I greatly appreciate both their support, so having hard evidence in support of my innocence is essential to us all.

11. My attorney communicated a list of available dates from Malibu Media. My wife and I already had plans to be out of town over the extended holiday weekend. This was to be vacation time with family, and as such I avoid phone calls, email, work and other everyday distractions.

_____                              07/21/14
Jeremiah Benson                                      _____
                                                     Date

2